JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Anthony Brown appeals from his convictions after a trial to the bench for carrying a concealed weapon and aggravated menacing.
 {¶ 2} Brown presents two assignments of error in which he claims his convictions are unsupported by either sufficient evidence or the weight of the evidence. Following a review of the record, this court cannot agree with Brown's claims; therefore, his convictions are affirmed.
 {¶ 3} Brown's convictions stem from a traffic accident that occurred on the evening of June 6, 2005. He was driving his vehicle in the city of Cleveland Heights. As he approached the intersection of Taylor and Superior Roads, a limousine, which was operated by Eric Stringfield, turned in front of Brown's car. A collision ensued.
 {¶ 4} As a result of the force involved, both vehicles sustained damage; the airbags in Brown's car deployed, and Stringfield's driver's-side door became inoperable. According to the testimony of Stringfield and his three passengers, Brown extricated himself from his vehicle and approached the limousine.
 {¶ 5} Stringfield requested Brown to "pull his car to the side of the road,"[1] intending to move the limousine from the flow of traffic. Brown refused. He seemed "really irate." Brown shouted that he had been in too many accidents, and that "he was going to kick [Stringfield's] ass" for causing this one. Brown warned Stringfield "that he would cut [Stringfield] with a knife if [he] tried to get away."
 {¶ 6} In the face of Brown's angry manner, Stringfield reversed the limousine and maneuvered it to the nearest curb. Brown followed, using "swear words," and again threatened to "cut [him] with a knife" if Stringfield attempted to leave. Stringfield closed his window, while one of his passengers, Carla O'Neal, used her cellular telephone to call 911.
 {¶ 7} Brown responded to these actions by returning to his vehicle, obtaining something from inside it, and walking back to the limousine. Until he came near, he held the item in one hand behind his back. He then began "waving" a knife toward the occupants, "yelling" that he "was going to cut all of [them]." The knife had a fixed blade which was slightly over two inches in length.
 {¶ 8} At that point, two of the limousine's passengers, O'Neal and her boyfriend, Robert Wilson, exited the rear seat. Wilson attempted to intervene, but Brown ordered both of them to "get back." Despite her fear, O'Neal displayed her telephone and informed Brown that she had the police department on the line. Brown then returned to his car to throw the knife inside before the police arrived.
 {¶ 9} Officer Dwayne Clayborn responded to the scene and spoke with the people involved in the incident. He testified that Brown still "was upset and yelling profusely obscenities." Brown initially denied displaying a knife, but subsequently admitted the knife was in his car. Clayborn located it on the driver's side floor.
 {¶ 10} As a result, Brown eventually was indicted on one count of carrying a concealed weapon, R.C. 2923.12, and five counts of aggravated menacing, R.C. 2903.21. He elected to have his case tried to the bench. After the state presented its case-in-chief, the trial court dismissed one of the aggravated menacing charges, but denied Brown's motion for acquittal as to the remaining counts. Brown then testified in his own behalf.
 {¶ 11} Brown denied acting in an aggressive manner. He stated that after the collision, although he was not feeling well, the people in the limousine harassed him. He further stated that the officer refused to hear his side of the incident and to conduct any investigation, in spite of the presence of other witnesses in the area. Brown admitted he had a knife in his vehicle at the time the incident occurred, but maintained the knife never appeared.
 {¶ 12} Thereafter, the trial court found Brown guilty of count one, carrying a concealed weapon, and the four remaining counts of aggravated menacing. Brown was ultimately sentenced to serve a total term of eighteen months of conditional community control for his convictions.
 {¶ 13} He presents the following two assignments of error on appeal:
 {¶ 14} "I. The conviction [on count one] was not supported by sufficient evidence where the state failed to present evidence that Mr. Brown carried a concealed weapon.
 {¶ 15} "II. The appellant's convictions are against the manifest weight of the evidence."
 {¶ 16} In his first assignment of error, Brown argues that the evidence failed to establish he had a "deadly weapon," as defined by R.C. 2923.11(A); therefore, the trial court improperly denied his motion for acquittal on count one.
 {¶ 17} Similarly, Brown argues in his second assignment of error that none of his convictions is sustained by the weight of the evidence, based upon the same premise he presents in his first assignment of error. Essentially, he asserts that a knife with a blade of only two and a half inches could not properly be considered a "deadly weapon," and, thus, the victims' testimony was not credible.
 {¶ 18} A defendant's motion for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 1997-Ohio-372; State v. Jenks (1991),61 Ohio St.3d 259; State v. Bridgeman (1978), 55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 19} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 175.
 {¶ 20} Thus, this court must be mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier-of-fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 21} In this case, Brown was charged in count one with carrying a concealed weapon in violation of R.C. 2923.12, which forbids a person from knowingly having concealed ready at hand any "deadly weapon." A "deadly weapon" is defined in R.C.2923.11(A) as "any instrument * * * capable of inflicting death," which is either: 1) "designed or specially adapted for use as a weapon"; or, 2) "possessed, carried, or used as a weapon." (Emphasis added.)
 {¶ 22} This court previously has determined that a knife with a blade of "three and one half inches" in length is an instrument which is "capable of inflicting death." State v. Johnson,
Cuyahoga App. No. 81299, 2003-Ohio-4177, ¶ 23. According to the trial testimony, the knife found in Brown's car had a two and a half inch blade.
 {¶ 23} The difference is so slight that, in arguing for acquittal of the charge, Brown's defense attorney conceded that a knife such as the one identified by the state's witnesses as the one used by his client "is something that can * * * inflict harm." Since any harm is a matter of degree, a knife with a two and a half inch blade, if either used often enough or when applied to a vital area, is as capable of inflicting death as is one with a blade only one inch longer. Viewed in a light most favorable to the prosecution, therefore, the evidence established the first necessary prong of R.C. 2923.11(A).
 {¶ 24} With regard to the second prong, each of the state's witnesses testified that after Brown retrieved the knife from his car, he approached them in a threatening manner, waving it and yelling that he would "cut them." As the trial court observed, this testimony, when viewed in a light most favorable to the prosecution, indicated an intent to harm the people in the limousine. Id, ¶ 24.
 {¶ 25} Since the evidence thus established that Brown "carried" the knife in his hand as a "deadly weapon," the trial court did not err in denying Brown's motion for acquittal on count one. Id., ¶ 25. Brown's first assignment of error, accordingly, is overruled.
 {¶ 26} In considering Brown's second assignment of error, the record reflects the occupants of the limousine provided a remarkably consistent version of the incident. Their testimony was corroborated by the testimony of not only Clayborn, a disinterested party, but also, to an extent, by Brown himself.
 {¶ 27} Under these circumstances, the trial court acted within its prerogative to believe the version presented by the state's witnesses over the one presented by Brown. State v.Nelson (Feb. 26, 1998), Cuyahoga App. No. 72266.
 {¶ 28} Accordingly, Brown's second assignment of error also is overruled.
 {¶ 29} Brown's convictions are affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J., and Calabrese, Jr., J. concur.
[1] Quotes indicate testimony given at trial.